United States District Court
Southern District of Texas

**ENTERED**

July 17, 2017

David J. Bradley, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| HOUSTON METHODIST HOSPITAL, | § | |
| SAN JACINTO METHODIST HOSPITAL, | § | |
| HOUSTON METHODIST ST. JOHN | § | |
| HOSPITAL, HOUSTON METHODIST | § | |
| ST. CATHERINE HOSPITAL, | § | |
| METHODIST HEALTH CENTERS d/b/a | § | |
| HOUSTON METHODIST WILLOWBROOK | § | |
| HOSPITAL, HOUSTON METHODIST | § | |
| WEST HOSPITAL, and HOUSTON | § | |
| METHODIST SUGAR LAND HOSPITAL, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | CIVIL ACTION NO. H-16-1469 |
| | § | |
| v. | § | |
| | § | |
| HUMANA INSURANCE COMPANY; | § | |
| HUMANA MILITARY HEALTHCARE | § | |
| SERVICES, INC. n/k/a HUMANA | § | |
| GOVERNMENT BUSINESS, INC.; | § | |
| HUMANA INC.; and HEALTH VALUE | § | |
| MANAGEMENT, INC. d/b/a | § | |
| CHOICECARE NETWORK, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

Plaintiffs, Houston Methodist Hospital, San Jacinto Methodist
Hospital, Houston Methodist St. John Hospital, Houston Methodist
St. Catherine Hospital, Methodist Health Centers d/b/a Houston
Methodist Willowbrook Hospital, Houston Methodist West Hospital,
and Houston Methodist Sugar Land Hospital (collectively
"Methodist"), bring this action against defendants, Humana
Insurance Company ("HIC"), Humana Military Healthcare Services,

Inc. n/k/a Humana Government Business, Inc. ("HGB"), Humana Inc., and Health Value Management, Inc. d/b/a Choicecare Network ("Choicecare") (collectively "Humana"), asserting claims for breach of contract, declaratory judgment pursuant to 28 U.S.C. §§ 2201-2202, and violations of the Texas Insurance Code, specifically provisions of the Texas Prompt Payment of Physicians and Providers Act (the "TPPA"), Texas Ins. Code Ann. Chapter 843 (relating to health maintenance organizations ("HMOs"), and Chapter 1301 (relating to preferred provider benefit plans ("PPBPs"). Methodist seeks to recover approximately $15,000,000.00 in statutory penalties from Humana for late payments of health care claims arising from Medicare Advantage,[1] fully-insured ERISA,[2] and individual commercial health plans.

Pending before the court is Defendants Humana Insurance Company, Humana Military Healthcare Services, Inc. n/k/a Humana Government Business, Inc., Humana Inc., and Health Value Management, Inc. d/b/a Choicecare Network's Motion for Partial Summary Judgment (Docket Entry No. 21). Humana seeks summary judgment that Methodist's TPPA claims arising from Medicare Advantage and fully-insured ERISA health plans are preempted by federal law. Defendants also seek summary judgment that Humana

---

[1]The Medicare Prescription Drug, Improvement and Modernization Act of 2003, codified at 42 U.S.C. § 1305, et seq.

[2]Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 101, et seq.

Inc. and HGB are not liable under the TPPA because none of the plaintiffs' claims arise from health insurance policies issued by those entities.   For the reasons stated below, the motion for partial summary judgment will be granted.

## I.   Standard of Review

Summary judgment is authorized if the movant establishes that there is no genuine dispute about any material fact and the law entitles it to judgment.   Fed. R. Civ. P. 56(a).   Disputes about material facts are "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Anderson v. Liberty Lobby, Inc., 106 S. Ct. 2505, 2511 (1986).   The Supreme Court has interpreted the plain language of Rule 56 to mandate the entry of summary judgment "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."   Celotex Corp. v. Catrett, 106 S. Ct. 2548, 2552 (1986).   A party moving for summary judgment "must 'demonstrate the absence of a genuine issue of material fact,' but need not negate the elements of the nonmovant's case." Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (per curiam).   If the moving party meets this burden, Rule 56 requires the nonmovant to go beyond the pleadings and show by admissible evidence that genuine issues of material fact exist

-3-

for trial. Id. In reviewing the evidence "the court must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." Reeves v. Sanderson Plumbing Products, Inc., 120 S. Ct. 2097, 2110 (2000).

## II.  Factual and Procedural Background[3]

Since at least March 1, 1999, Methodist and Humana have been parties to Hospital Participation Agreements ("Provider Agreements") and amendments thereto, in which Methodist agrees to provide health care services to enrollees and beneficiaries of Humana's health care plans in exchange for payment at a contractual rate.  Humana has separate contracts with the enrollees and beneficiaries of its various health care plans including inter alia Medicare Advantage health care plans ("MA Plans") and fully insured ERISA health care plans ("ERISA Plans").

On April 22, 2016, Methodist asserted a demand for arbitration seeking over $15,000,000.00 in statutory penalties for alleged violations of the TPPA.  The demand for arbitration included a spreadsheet with approximately 468 claims that Methodist alleged

---

[3]The facts in this section are referenced in both Defendants Humana Insurance Company, Humana Military Healthcare Services, Inc. N/K/A Humana Government Business, Inc., Humana Inc., and Health Value Management, Inc. D/B.A. Choicecare Network's Motion for Partial Summary Judgment ("Defendants' MPSJ"), Docket Entry No. 21, pp. 11-14, and Plaintiffs' Response to Defendants' Motion for Partial Summary Judgment ("Plaintiffs' Response"), Docket Entry No. 23, pp. 9-11.  See also Declaration of Leslie Poff ("Poff Declaration"), Exhibit A to Defendants' MPSJ, Docket Entry No. 22, and Affidavit of Bret Curran ("Curran Affidavit"), Exhibit 1 to Plaintiffs' Response, Docket Entry No. 24-1.

Humana paid late.[4]   Methodist has since refined its list of allegedly late paid claims and grouped them into three categories: (1) claims from MA Plans; (2) claims from individual plans; and (3) claims from fully insured ERISA Plans.[5]   Methodist seeks $13,450,376.42 for late payment of MA Plan claims, and $1,722,521.00 for late payment of fully insured ERISA Plan claims.[6] On May 25, 2016, Humana filed its Original Complaint to Enjoin Arbitration and for Declaratory Judgment (Docket Entry No. 1), asserting that not all of Methodist's claims are subject to arbitration.

On June 15, 2016, Methodist filed an Answer and Counterclaim (Docket Entry No. 6) (1) stating that Humana's arbitration demand is moot because Methodist dismissed the previously filed arbitration proceeding in favor of asserting all of its claims in this action and (2) asserting counterclaims for (a) breach of contract, (b) violation of the Texas Insurance Code based on

---

[4]See Poff Declaration, Exhibit A to Defendants' MPSJ, Docket Entry No. 22; and Spreadsheet, Exhibit A-1 thereto, Docket Entry No. 22-1.

[5]See Spreadsheet, Exhibit A-2 to Defendants' MPSJ, Docket Entry No. 22-2 (listing and color coding all of Methodist's claims: Yellow for MA Plan claims; blue for individual plan claims; and purple for fully insured ERISA plan claims); and Table, Exhibit A-3 to Defendants' MPSJ, Docket Entry No. 22-3 (identifying the claims set forth in Exhibit A2, lines 2-332 as MA Plan claims, Lines 335-340 as individual plan claims; and lines 343-358 as fully insured ERISA Plan claims).

[6]Plaintiffs' Response, Docket Entry No. 23, p. 11.

-5-

Humana's alleged failure to timely pay for services in violation of the TPPA, and (c) declaratory judgment that Methodist's TPPA claims were not preempted by federal law.  Methodist's counterclaim also named two additional defendants:  Humana Health Plan of Texas, Inc. f/k/a Memorial Sisters of Charity Insurance ("HHP Texas") and Health Value Management, Inc. d/b/a National Transplant Network ("NTN").

On July 18, 2016, Methodist filed (1) an Unopposed Motion to Dismiss Without Prejudice as to Claims and Causes of Action Against Humana Health Plan of Texas, Inc. f/k/a Memorial Sisters Of Charity Insurance And Health Value Management, Inc. d/b/a National Transplant Network, (2) an Unopposed Motion to Realign the Parties, and (3) an Unopposed Motion for Leave to File Amended Complaint (Docket Entry No. 10).  The court granted Methodist's motion and dismissed Methodist's claims against HHP Texas and NTN without prejudice, realigned the parties so that the Methodist entities are now the plaintiffs and the Humana entities are now the defendants, and granted Methodist leave to file an amended complaint (Docket Entry No. 11).

On August 11, 2016, Methodist filed Plaintiffs' First Amended Complaint (Docket Entry No. 12), asserting claims for breach of contract, violation of the TPPA's timely pay requirements, and declaratory judgment that its TPPA claims are not preempted by federal law.  On September 6, 2016, Humana filed Defendants' Answer

-6-

to Plaintiffs' First Amended Complaint and Counterclaim (Docket Entry No. 15) seeking declaration that Methodist's TPPA claims are preempted by federal law; and on November 18, 2016, Humana filed the pending motion for partial summary judgment.

## III.  Analysis

Methodist's TPPA claims seek statutory penalties for Humana's failure to pay "clean claims" within time periods required by the Texas Insurance Code, i.e., Chapter 843 for claims from HMOs, and Chapter 1301 for claims from PPBPs.  A "clean claim" is one that complies with the applicable sections of the Texas Insurance Code. See Tex. Ins. Code §§ 843.336(a) and 1301.101.  Humana seeks summary judgment on Methodist's TPPA claims arising from MA Plans as expressly preempted under the Medicare Act, 42 U.S.C. § 1395, et seq., and on claims arising from fully insured ERISA Plans as preempted by ERISA's express preemption provision, 29 U.S.C. § 1144(a), and principles of conflict preemption.  Defendants' MPSJ also seeks dismissal of the claims asserted against Humana Inc. and HGB because neither of these entities issued health insurance policies from which Methodist's TPPA claims arise.[7]  Asserting that the TPPA merely regulates the time for payment of clean claims, and does not involve provision of benefits, Methodist argues that its TPPA claims are not preempted.[8]

---

[7]Defendants' MPSJ, Docket Entry No. 21, pp. 11 and 14.

[8]Plaintiffs' Response, Docket Entry No. 23, p. 11.

## A.   Applicable Law

### 1.   Federal Preemption Law

Federal law recognizes both express and implied preemption. Gade v. National Solid Wastes Management Association, 112 S. Ct. 2374, 2383 (1992).  "Express preemption requires Congress to explicitly state its intent to preempt relevant state laws." United States v. Zadeh, 820 F.3d 746, 751 (5th Cir. 2016) (citing Pacific Gas & Electric Co. v. State Energy Resources Conservation & Development Commission, 103 S. Ct. 1713, 1722 (1983), and Jones v. Rath Packing Co., 97 S. Ct. 1305, 1309 (1977)).  Absent explicit preemptive language, the Supreme Court has recognized at least two types of implied preemption:   field preemption and conflict preemption.  Id.  "Field preemption occurs when Congress intends to 'occupy the field,' taking over a field of law to the exclusion of state or local authority."  Id. (quoting Sprietsma v. Mercury Marine, 123 S. Ct. 518, 527 (2002)).  "[C]onflict preemption takes two forms: (i) when compliance with both state and federal law is impossible, and (ii) when a state law 'stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.'"  Id.  "Federal preemption of state law is fundamentally 'a question of Congressional intent. . .'"  Burkey v. Government Employees Hospital Association, 983 F.2d 656, 659 (5th Cir. 1993) (quoting English v. General Electric Co., 110 S. Ct. 2270, 2275 (1990)).

2.   <u>Texas Prompt Pay Act</u>

The TPPA requires insurers receiving a "clean claim" to determine, within specified times, whether the claim is payable: 45 days for non-electronic claims and 30 days for electronic claims. Within these times insurers must either (1) pay the claim, (2) partially pay and partially deny the claim and notify the provider in writing of the reason for partial denial, or (3) deny the claim in full and notify the provider in writing of the reason for denial. Tex. Ins. Code §§ 843.338, 1301.103. The parties do not dispute that the claims at issue in this action are "clean claims."[9] The TPPA imposes a range of penalties for late payment of payable "clean claims." Tex. Ins. Code § 843.342 (imposing penalties when "a clean claim submitted to a health maintenance organization is payable and the health maintenance organization does not determine under this subchapter that the claim is payable and pay the claim on or before the date the HMO is required to make a determination or adjudication of the claim"), § 1301.137(a) (imposing penalties when "a clean claim submitted to an insurer is payable and the insurer does not determine . . . that the claim is payable and pay the claim on or before the date the insurer is required to make a determination or adjudication of the claim").

─────────────

[9]Defendants' MPSJ, Docket Entry No. 21, p. 11; Plaintiffs' Response, Docket Entry No. 23, p. 9.

**B.    Methodist's TPPA Claims Arising from MA Plans Are Preempted.**

1.    <u>Medicare and Medicare Preemption</u>

The Medicare program, which provides medical insurance for the aged and disabled, is administered by the Center for Medicare and Medicaid Services ("CMS"), a division of the U.S. Department of Health and Human Services ("HHS"). <u>See RenCare, Ltd. v. Humana Health Plan of Texas, Inc.</u>, 395 F.3d 555, 556 (5th Cir. 2004). The Medicare Act, 42 U.S.C. §§ 1395-1395fff, consists of five parts, labeled parts A, B, C, D, and E. <u>See Memorial Hospital at Gulfport v. Sebelius</u>, 499 F. App'x 393, 395 (5th Cir. 2012). Medicare Part C — the only part relevant to this case — was created by passage of the Balanced Budget Act of 1997, and was originally called the Medicare+Choice (M+C) program. <u>See</u> Medicare Program; Medicare+Choice Program ("M+C"), 65 Fed. Reg. 40170, 40171 (June 29, 2000). M+C allowed Medicare eligible individuals to receive benefits through a variety of private health plans. <u>Id.</u> at 40172. In 2003 Congress later passed the Medicare Prescription Drug, Improvement, and Modernization Act, which replaced the M+C program with the Medicare Advantage ("MA") program. Medicare Program; Establishment of the Medicare Advantage Program, 70 Fed. Reg. 4588, 4589 (Jan. 28, 2005).

Under the MA program CMS contracts with HMOs and other private entities for health care services to Medicare enrollees. <u>Id.</u> at 4589-90. Entities entering into MA contracts with CMS are called MA organizations. 42 C.F.R. § 422.2. MA organizations must

-10-

satisfy detailed requirements to qualify for inclusion in the MA program.  42 C.F.R. § 422.503.  Once CMS and an MA organization enter into a contract, CMS makes capitation payments to the MA organization for enrollee health care services.  42 C.F.R. § 422.304(a).  A capitation payment is "a fixed per enrollee per month amount paid for contracted services without regard to the type, cost, or frequency of services furnished."  42 C.F.R. § 422.350(b).  Upon payment from CMS, the MA organization "assume[s] full financial risk on a prospective basis for the provision of the health care services for which benefits are required to be provided," 42 U.S.C. § 1395w-25(b), and "must adopt and maintain arrangements satisfactory to CMS to protect its enrollees from incurring liability (for example, as a result of an organization's insolvency or other financial difficulties) for payment of any fees that are the legal obligation of the MA organization."  42 C.F.R. § 422.504(g)(1).  MA organizations may contract with third parties for administrative and health care services to enrollees.  42 C.F.R. § 422.200-204.  Contracts between MA organizations and providers are negotiated freely, with few federal requirements.  MA regulations do however require that contracts between MA organizations and providers contain prompt pay provisions.  See 42 C.F.R. § 422.520.

The Medicare Act contains an express preemption provision stating:

-11-

> Relation to State laws.  The standards established under
> this part shall supersede any State law or regulation
> (other than State licensing laws or State laws relating
> to plan solvency) with respect to MA plans which are
> offered by MA organizations under this part.

42 U.S.C. § 1395w-26(b)(3)(2003).   Before 2003 the Medicare
preemption provision stated that federal standards would supersede
state law and regulations with respect to MA Plans only if a state
law or regulation was "inconsistent" with Medicare standards.  42
U.S.C. § 1395w-26(b)(3)(A)(2000).[10]   The legislative history
reflects that the 2003 amendment was intended to increase the scope
of preemption, stating that "the [MA Program] is a federal program
operated under Federal rules and that State laws, do not, and
should not apply, with the exception of state licensing laws or
state laws related to plan solvency."   H. Conf. Rep. 108-391 at
557, reprinted in 2003 U.S.C.C.A.N. 1808, 1926 (November 21, 2003).
CMS has however stated that preemption occurs only when CMS creates
standards in the area regulated.   See Medicare Prescription Drug
Benefit, 70 Fed. Reg. 4194-01, 4320 (January 28, 2005).

   2.   Application of the Law to the Undisputed Facts

   Humana argues that Methodist's TPPA claims arising from MA
Plans are preempted by the Medicare Act because the TPPA is a state

_____

   [10]The state standards specifically superseded were:
"(i) Benefit requirements (including cost-sharing requirements).
(ii) Requirements relating to inclusion or treatment of providers.
(iii) Coverage determinations (including related appeals and
grievance processes).   (iv) Requirements relating to marketing
materials and summaries and schedules of benefits regarding a
Medicare+Choice plan."   42 U.S.C. § 1395w-26(b)(3)(B)(2000),
amended by 42 U.S.C. § 1395w-26(b)(3)(2003).

law with respect to MA Plans that "is neither a state licensing law nor a law relating to plan solvency which [were] the *only* laws saved from MA preemption,"[11] and because "CMS has established standards governing . . . prompt payment of providers."[12]   In support of its argument, Humana cites <u>South Texas Health System v. Care Improvement Plus of Texas Insurance Co.</u>, Civil Action No. 7:14-CV-912, 2015 WL 9257021, at *6 (S.D. Tex. Sept. 28, 2015) ("The Court finds that the Secretary of [HHS], through CMS, has established, by regulation, standards under Part C of Medicare that regulate the prompt payment of claims under MA Plans.  Accordingly, Plaintiff's claims under the [TPPA] are expressly preempted."); and <u>General Surgical Associates, P.A. v. Humana Health Plan of Texas, Inc.</u>, No. SA-14-CA-31-RP (HJB), 2015 WL 1880276, at *8 (W.D. Tex. March 17, 2015) ("Because CMS 'actually create[d] standards' for the prompt payment of claims, the TPPA is expressly preempted under [42 U.S.C.] § 1395w-26(b)(3)."), <u>report and recommendation adopted sub nom. General Surgical Associates, P.A. v. Humana Health Plan of Texas, Inc.</u>, No. 5:14-CV-031-RP, 2015 WL 1880298 (W.D. Tex. April 23, 2015).

Methodist argues that its TPPA claims arising from MA Plans are not preempted because the TPPA is not a state law with respect to MA Plans but is, instead, a state law with respect to

_____

[11]Defendants' MPSJ, Docket Entry No. 21, p. 17.

[12]<u>Id.</u>

arrangements, <u>i.e.</u>, contracts between MA organizations and providers.[13]  Citing <u>RenCare</u>, at 559, Methodist argues that the Fifth Circuit has recognized that the CMS regulations governing prompt payment regulate arrangements or provider agreements, not MA Plans.[14]

(a)   The TPPA is a State Law "With Respect to" MA Plans.

As Methodist recognizes

an "MA Plan" is a "plan of health insurance" or a plan providing "health benefits coverage" offered by an MA Organization.     Thus, the Medicare Act preemption provision is intended to expressly preempt "any State law or regulation . . . with respect to [plans of health insurance or health benefits coverage plans] which are offered by MA organizations under this Part [C]."[15]

Methodist's argument that the TPPA is not a state law with respect to MA Plans because the TPPA regulates only arrangements with providers is contradicted by provisions of the Texas Insurance Code expressly stating that the TPPA applies to HMOs and to insurers. <u>See</u> Tex. Ins. Code § 843.338 (imposing timely pay requirements on HMOs receiving clean claims from participating physicians or providers); and § 1301.103 (imposing timely pay requirements on insurers receiving clean claims from preferred providers).   The Texas Insurance Code states that "'Health Maintenance Organization' means a person who arranges for or provides to enrollees on a

---

[13]Plaintiffs' Response, Docket Entry No. 23, pp. 11-20.

[14]<u>Id.</u> at 22.

[15]<u>Id.</u> at 14.

-14-

prepaid basis a health care plan, a limited health care service plan, or a single health care service plan," Tex. Ins. Code § 843.002(14), and that "'Insurer' means a life, health, and accident insurance company, health and accident insurance company, health insurance company, or other company operating under Chapter 841, 842, 884, 885, 982, or 1501, that is authorized to issue, deliver, or issue for delivery in this state health insurance policies." Tex. Ins. Code § 1301.001(5). Moreover, the provision governing the TPPA's applicability to preferred providers expressly states that it applies to preferred provider benefit plans:

> (a)   Except as otherwise specifically provided by this chapter, this chapter applies to each preferred provider benefit plan in which an insurer provides, through the insurer's health insurance policy, for the payment of a level of coverage that is different depending on whether an insured uses a preferred provider or a nonpreferred provider.

> (b)   Unless otherwise specified, an exclusive provider benefit plan is subject to his chapter in the same manner as a preferred provider benefit plan.

Texas Ins. Code § 1301.0041 (a)-(b).   Subsection (c) of this provision identifies plans to which that chapter of the Texas Insurance Code does not apply:

(c) This chapter does not apply to:

> (1) the child health plan program under Chapter 62, Health and Safety Code; or

> (2) a Medicaid managed care program under Chapter 533, Government Code.

Texas Ins. Code § 1301.0041 (c).

Because the TPPA provisions of the Texas Insurance Code expressly apply to HMOs who receive clean claims from participating physicians or providers and to insurers who receive clean claims from preferred providers, because the applicability provision of Chapter 1301 governing PPBPs expressly exempts some plans but does not mention MA Plans, and because Methodist fails to cite any provision of the Texas Insurance Code showing that the TPPA is a state law with respect to arrangements or provider agreements, the court concludes that the TPPA is not — as Methodist argues — a state law that only regulates arrangements, i.e., contracts with providers, but is instead a state law with respect to HMOs and insurers who provide preferred provider and exclusive provider benefit plans, including MA Plans.

(b)   CMS Standards Exist for Prompt Payment of Claims.

In Part C of the Medicare Act Congress expressly preempted all but a limited number of state laws, i.e., state laws relating to licensing or plan solvency.  See 42 U.S.C. § 1395w-26(b)(3)(2003). The parties do not dispute that the TPPA does not fall in the limited category of state laws excepted from preemption.  CMS has stated, however, that preemption "operates only when CMS actually creates standards in the area regulated."  Medicare Prescription Drug Benefit, 70 Fed. Reg. 4194-01, 4320 (Jan. 28, 2005).  Even though the court has concluded that the TPPA is a state law with respect to MA Plans, Methodist's TPPA claims will only be preempted if CMS has created standards for prompt payment of claims.

-16-

Citing 42 C.F.R. § 422.520, Humana argues that Methodist's TPPA claims are preempted because CMS has created standards for prompt payment of claims.[16] Asserting that § 422.4520 distinguishes between non-contracted providers and contracted providers like itself, Methodist responds that its TPPA claims are not preempted because they arise from the parties' private arrangements or provider agreements.[17]   Methodist argues that under 42 C.F.R. § 422.520 there is a distinction between **subsection (a)**, which governs providers who do not have arrangements with insurers or who choose to submit claims on behalf of enrollees under the enrollees' MA private fee-for-service plans and agree to accept payment for their services at rates determined under the plans, pursuant to which the TPPA would be a regulation with respect to an MA Plan, and **subsection (b)** pursuant to which the TPPA, as applied to providers who make claims based on their arrangements, pursuant to which the TPPA would not be a state regulation with respect to MA Plans.[18]   Methodist argues that

> [p]roviders who choose to accept payment under the terms of an enrollee's MA Plan cannot recover under [the] TPPA because (1) a provider must have a contract with the insurer to assert TPPA claims (*see Christus Health Gulf Coast v. Aetna, Inc.*, 397 S.W.3d 651, 654 (Tex. 2013) (holding "the Prompt Pay Statute contemplates contractual privity between HMOs and providers")) and (2) even if the

---

[16]Defendants' MPSJ, Docket Entry No. 21, p. 17 & n.20.

[17]Plaintiffs' Response, Docket Entry No. 23, pp. 14-20.

[18]<u>Id.</u> at 16-17.

provider has a contract, the TPPA would be preempted *as applied to claims asserted in this manner*.   In these circumstances, i.e., claims asserted pursuant to an MA Plan, the TPPA would be a regulation "with respect to MA Plans."[19]

Methodist contends, however, that

[a] different result obtains under [§] 422.520(b).  That section covers situations in which the MA Organization and the Provider have a contract, transforming the relationship into an "Arrangement."  Because "MA Plan" does not include "Arrangements," subsection (b) is not a regulation with respect to an MA Plan.  Likewise, then, the TPPA, *as applied to providers who make claims pursuant to their Arrangements*, is not a State law or regulation with respect to MA Plans.  Because Medicare preemption only applies to "State laws or regulations . . . with respect to MA Plans," TPPA *as applied to Methodist's claims based on its Arrangements with Defendants* does not fall within Medicare's domain of preemption.[20]

Citing RenCare, 395 F.3d at 559, Methodist argues that "the Fifth Circuit has recognized [that §] 422.520(b) regulates MA organization-provider contracts (Arrangements), not MA Plans."[21]

Humana responds that "Methodist's position cannot be reconciled against 42 U.S.C. § 1395w-26(b)(3)'s express preemption language, nor can it be sustained in the face of applicable legal authority which recognizes [that] federal regulations, not state law, govern Humana's prompt payment obligations."[22]   Humana also

---

[19]Id. at 17.

[20]Id.

[21]Id. at 22.

[22]Humana Defendants' Reply to Plaintiffs' Response to the Humana Defendants' Motion for Partial Summary Judgment ("Humana's Reply"), Docket Entry No. 25, p. 4.

argues that Methodist's reliance on RenCare, 395 F.3d at 555, is misplaced because that case involved field preemption and exhaustion of administrative remedies and did not involve express preemption at issue here.[23]

The CMS regulation at 42 C.F.R. § 422.520 requires contracts between CMS and MA organizations, and between MA organizations and health care providers, to contain prompt pay provisions:

(a)  Contract between CMS and the MA organization.

    (1)  The contract between CMS and the MA organization must provide that the MA organization will pay 95 percent of the "clean claims" within 30 days of receipt if they are submitted by, or on behalf of, an enrollee of an MA private fee-for-service plan or are claims for services that are not furnished under a written agreement between the organization and the provider.

    (2)  The MA organization must pay interest on clean claims that are not paid within 30 days in accordance with sections 1816(c)(2)(B) and 1842(c)(2)(B).

    (3)  All other claims from non-contracted providers must be paid or denied within 60 calendar days from the date of the request.

(b)  (1)  Contracts between MA organizations and providers and suppliers. Contracts or other written agreements between MA organizations and providers must contain a prompt payment provision, the terms of which are developed and agreed to by both the MA organization and the relevant provider.

    (2)  The MA organization is obligated to pay contracted providers under the terms of the contract between the MA organization and the provider.

---

[23]Id. at 3 and 10.

Methodist's argument that the distinction in § 422.520 between contracted and non-contracted providers precludes preemption of TPPA claims arising from arrangements or provider agreements with Humana fails because the text of § 422.520 provides standards for prompt payment of claims regardless of whether they are submitted by contracted or non-contracted providers. Section 422.520(a) requires prompt payment of claims for enrollees "of an MA private fee-for-service plan" and "claims for services that are not furnished under a written agreement between the organization and the provider." 42 C.F.R. § 422.520(a)(1). That section also provides CMS oversight for prompt payment of claims that MA organizations receive "from non-contracted providers." Id. § 422.520(a)(3). For contracted providers like Methodist, § 422.520(b)(1) requires MA organizations like Humana to include prompt pay provisions in their contracts, and § 422.520(b)(2) states that "[t]he MA organization is obligated to pay contracted providers under the terms of the contract between the MA organization and the provider." Moreover, 42 C.F.R. § 422.510(a)(4)(v) authorizes CMS oversight regarding payment of contracted and non-contracted providers alike; in either case, "CMS may . . . terminate a contract if CMS determines that the MA organization . . . [s]ubstantially failed to comply with the prompt payment requirements in § 422.520." 42 C.F.R. § 422.510(a)(4)(v).

Humana has submitted evidence that the amended Hospital Participation Agreements between Humana's MA entity, Health Value

-20-

Management, Inc. d/b/a Choicecare Network, and Methodist effective January 2012 and March 2015 include prompt-pay provisions. In pertinent part the January 2012 agreement states: "The parties agree that Payor will process all claims for Covered Services which are accurate and complete ("Clean Claims") within thirty (30) days from the date of receipt. For the purpose of this Amendment, Clean Claims means claims that conform to the requirements under original Medicare."[24] In pertinent part the March 2015 agreement states: "The parties agree that Payor will process all claims for Covered Services which are accurate and complete ("Clean Claims") within thirty (30) days from the date of receipt. For the purpose of this Amendment, Clean Claims means claims that conform to the requirements under original Medicare."[25] Had the parties so desired, they could have included penalties for late payment in their agreements, but neither agreement does so.

The court is not persuaded by Methodist's argument that in RenCare, 395 F.3d at 559, the Fifth Circuit recognized that § 422.520(b) regulates MA arrangements or provider agreements, but not MA Plans. In RenCare, RenCare — a provider of kidney dialysis

---

[24]Declaration of Stacy Ferguson ("Ferguson Declaration"), Exhibit D to Defendants' MPSJ, Docket Entry No. 22-34; and January 2012 Medicare Advantage Amendment to ChoiceCare Agreement, Exhibit D-4 to Defendant's MPSJ, Docket Entry No. 22-38, p. 1 ¶ 4.b.

[25]Ferguson Declaration, Exhibit D to Defendants' MPSJ, Docket Entry No. 22-34; and March 2015 Medicare Advantage Amendment to ChoiceCare Agreement, Exhibit D-6 to Defendant's MPSJ, Docket Entry No. 22-40, p. 1 ¶ 5.b.

services — sued Humana in state court for breach of contract, detrimental reliance, fraud, and violations of state law seeking reimbursement for services provided to Humana enrolles under a contract between RenCare and Humana.  395 F.3d at 556.  Humana removed the action to federal district court arguing that RenCare's claims were completely preempted by the Medicare Act.  When RenCare moved to remand, the court remanded the claims relating to Humana's commercial enrollees and retained jurisdiction over claims relating to Humana's MA Plan enrollees.  The court subsequently dismissed the claims that remained in federal court, finding that RenCare had failed to exhaust its administrative remedies under the Medicare Act.  Id. at 556-57.  The Fifth Circuit reversed, holding that because RenCare's claims for breach of contract, detrimental reliance, fraud, and violations of state law were not "'inextricably intertwined,' with a claim for Medicare benefits," those claims did not "arise" under the Medicare Act, and were not subject to federal jurisdiction or federal administrative remedies. Id. at 559-60.

Humana argues that RenCare is irrelevant to the dispute in this case because RenCare did not address express preemption under 42 U.S.C. § 1395w-26(b)(3), but instead addressed the question of whether the claims at issue there were "claims arising under" the Medicare Act and, therefore, subject to review under 42 U.S.C. §§ 405(g) and (h), made applicable to the Medicare Act by 42 U.S.C. § 1395ii, and whether the Medicare Act's exhaustion of

administrative remedies requirements gave rise to federal question jurisdiction, subjects that are not at issue in this case. The court concludes that Humana is correct.

Applying the provisions of 42 U.S.C. § 405(h), the RenCare court held that "RenCare's claims are not intertwined, much less 'inextricably intertwined,' with a claim for Medicare benefits" so as to be claims arising under the Medicare Act.  Id.  The issue considered by the RenCare court differs from the express preemption provision of 42 U.S.C. § 1395w-26(b)(3) at issue here, which provides for preemption only when standards have been established by CMS under the Medicare Act.  While stating that "contracts between [MA] organizations and providers are subject to very few restrictions," RenCare acknowledges that 42 C.F.R. § 422.520(b) requires contracts between MA organizations and providers to contain prompt pay provisions.  395 F.3d at 559.

As explained above, § 422.520(b)(2) requires Humana to comply with the prompt pay provision included in the parties' contract, and § 422.510(a)(4)(v) authorizes CMS to terminate Humana's contract if it substantially fails to comply with that prompt pay provision.  Because these payment standards were clearly established "with respect to MA plans which are offered by MA organizations under this part," they "supersede any State law or regulation (other than State licensing laws or State laws relating to plan solvency)."  42 U.S.C. § 1395w-26(b)(3).  Moreover, since CMS has "actually create[d] standards" for the prompt payment of

-23-

claims, the TPPA's prompt payment provisions are expressly preempted under § 1395w-26(b)(3). <u>See</u> Medicare Prescription Drug Benefit, 70 Fed. Reg. 4194-01, 4320. Thus, Humana is entitled to summary judgment on Methodist's TPPA claims arising from MA Plans because those claims are expressly preempted by the Medicare Act. <u>See</u> <u>South Texas Health System</u>, 2015 WL 9257021, at *6 (TPPA claims arising from MA Plans expressly preempted by the Medicare Act); <u>General Surgical Associates</u>, 2015 WL 1880276, at *8 (same).

## C.   Methodist's TPPA Claims Arising from Fully Insured ERISA Plans Are Preempted.

Humana argues that Methodist's TPPA claims arising from fully insured ERISA Plans are preempted by ERISA because the TPPA "relates to" ERISA Plans, the TPPA is not saved from preemption, and if saved, the TPPA is nevertheless preempted because its statutory deadlines and late pay penalties conflict with ERISA's claim processing regulations.[26]  Methodist argues that its TPPA claims against fully insured ERISA Plans are not preempted because:

> First, a claim that implicates the timing of payment as set out in a provider agreement, rather than the right to payment under the terms of a benefit plan, is not expressly preempted. Second, Methodist's claims (a) do not relate to any ERISA plan, (b) do not directly affect the relationship among the traditional ERISA parties; and (c) do not conflict with ERISA.[27]

---

[26]Defendants' MPSJ, Docket Entry No. 21, pp. 24-31.

[27]Plaintiffs' Response, Docket Entry No. 23, p. 22.

-24-

1.  Law of ERISA Preemption

ERISA preemption is addressed in two different provisions often referred to as providing for complete and express or conflict preemption: 29 U.S.C. § 1132(a) and § 1144(a). ERISA's preemption provisions are intended

> "to ensure that plans and plan sponsors would be subject to a uniform body of benefits law; the goal was to minimize the administrative and financial burden of complying with conflicting directives among States or between States and the Federal Government . . ., [and to prevent] the potential for conflict in substantive law . . . requiring the tailoring of plans and employer conduct to the peculiarities of the law of each jurisdiction."

New York State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co., 115 S. Ct. 1671, 1677 (1995) (quoting Ingersoll-Rand Co. v. McClendon, 111 S. Ct. 478, 484 (1990)). "[T]he basic thrust of the pre-emption clause . . . was to avoid a multiplicity of regulation in order to permit the nationally uniform administration of employee benefit plans." Id. at 1677-78. See also Rush Prudential HMO, Inc. v. Moran, 122 S. Ct. 2151, 2166 (2002) (recognizing that ERISA was intended to induce "employers to offer benefits by assuring a predictable set of liabilities, under uniform standards of primary conduct and a uniform regime of ultimate remedial orders and awards when a violation has occurred"); Aetna Health Inc. v. Davila, 124 S. Ct. 2488, 2495 (2004) (To further its goal, "ERISA includes expansive pre-emption provisions . . . which are intended to ensure that employee benefit plan regulation would be 'exclusively a federal concern.'").

-25-

(a)   29 U.S.C. § 1132(a):   Complete Preemption

Preemption under § 1132(a), often called "complete preemption," occurs when federal law so completely occupies an area of law that state causes of action are entirely displaced by federal law. Ellis v. Liberty Life Assurance Company of Boston, 394 F.3d 262, 276 & n.34 (5th Cir. 2004), cert. denied, 125 S. Ct. 2941 (2005). "Section [1132(a)], by providing a civil enforcement cause of action, completely preempts any state cause of action seeking the same relief, regardless of how artfully pleaded as a state action." Id.  Complete preemption is not at issue here.

(b)   29 U.S.C. § 1144(a): Conflict or Express Preemption

Preemption under § 1144(a), often called "express" or "conflict preemption," constitutes a defense to state law claims. See id. ERISA's conflict preemption structure derives from three statutory provisions: (1) the "Preemption Clause," (2) the "Saving Clause," and (3) the "Deemer Clause." See 29 U.S.C. § 1144. The Preemption Clause provides that ERISA will "supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan." 29 U.S.C. § 1144(a). The Saving Clause operates to "save" or exempt from preemption state laws that "regulate[ ] insurance . . ." See 29 U.S.C. § 1144(b)(2)(A). In such cases, even laws that clearly "relate to" employee benefit plans are exempt from ERISA preemption. Finally, the Deemer Clause ensures that ERISA Plans are not "deemed" to be engaged in the

insurance business for purposes of determining if the Saving Clause applies. See 29 U.S.C. § 1144(b)(2)(B). Nevertheless, the Supreme Court has held that an otherwise "saved" law may be preempted if it directly conflicts with congressional policies behind ERISA. See Davila, 124 S. Ct. at 2500. Thus, in determining whether a law is preempted under 29 U.S.C. § 1144(a), courts first look to whether the law "relates to" employee benefit plans. If not, the law is not preempted; if so, the court must address whether the law is "saved" by the Saving Clause. If the law is "saved" by the Saving Clause, the court must determine whether the Deemer Clause applies so that the Saving Clause does not protect the law from preemption.

2.   <u>Application of the Law to the Undisputed Facts</u>

Humana argues that the TPPA is preempted because it "relates to" ERISA Plans, is not saved by the Saving Clause, and conflicts with the policies behind ERISA.[28] Methodist argues that its TPPA claims are not preempted because they do not "relate to" any ERISA plan, and do not conflict with policies behind ERISA.[29]

(a)   The TPPA "Relates to" an ERISA Plan.

The Supreme Court has described ERISA's express preemption clause, 29 U.S.C. § 1144(a), as "terse but comprehensive." <u>Gobeille v. Liberty Mutual Ins. Co.</u>, 136 S. Ct. 936, 943 (2016).

---

[28]Defendants' MPSJ, Docket Entry No. 21, pp. 23-31.

[29]Plaintiffs' Response, Docket Entry No. 23, p. 22.

Nevertheless, the Supreme Court has long recognized that "[i]f 'relate to' were taken to extend to the furthest stretch of its indeterminacy, then for all practical purposes pre-emption would never run its course," id. (quoting Travelers, 115 S. Ct. at 1677), and that "is a result 'no sensible person could have intended.'" Id. (quoting California Division of Labor Standards Enforcement v. Dillingham Construction, N.A., Inc., 117 S. Ct. 832, 843 (1997) (Scalia, J., concurring)). "[T]he need for workable standards has led the Court to reject 'uncritical literalism' in applying the clause." Id. (citing Travelers, 115 S. Ct. at 1677). In Gobeille the Court recognized that

> case law to date has described two categories of state laws that ERISA pre-empts. First, ERISA pre-empts a state law if it has a "reference to" ERISA plans. . . To be more precise, "[w]here a State's law acts immediately and exclusively upon ERISA plans . . . or where the existence of ERISA plans is essential to the law's operation. . ., that 'reference' will result in pre-emption." [Dillingham, 117 S. Ct. [at 838] . . . Second, ERISA pre-empts a state law that has an impermissible "connection with" ERISA plans, meaning a state law that "governs . . . a central matter of plan administration" or "interferes with nationally uniform plan administration." Egelhoff v. Egelhoff [ex rel. Breiner], [] 121 S. Ct. 1322[, 1328] (2001). A state law also might have an impermissible connection with ERISA plans if "acute, albeit indirect, economic effects" of the state law "force an ERISA plan to adopt a certain scheme of substantive coverage or effectively restrict its choice of insurers." Travelers, [] 115 S. Ct. [at 1683].

Id. The Court said that "[w]hen considered together, these formulations ensure that ERISA's express pre-emption clause receives the broad scope Congress intended while avoiding the clause's susceptibility to limitless application." Id.

Citing Egelhoff, 121 S. Ct. at 1327-28, Humana argues that the TPPA falls in the second category of state laws that the Gobeille Court recognized are preempted, i.e., laws that govern or interfere with the uniformity of plan administration and so have an impermissible connection with ERISA Plans.[30] In Egelhoff the Court stated that "to determine whether a state law has the forbidden connection [to ERISA plans], we look both to 'the objectives of the ERISA statute as a guide to the scope of the state law that Congress understood would survive,' as well as to the nature of the effect of the state law on ERISA plans."  Id. at 1327 (quoting Dillingham, 117 S. Ct. at 838).  The Fifth Circuit has cited Egelhoff for having recognized that "ERISA's preemption provision is intended 'to establish a uniform administrative scheme, which provides a set of standard procedures to guide processing of claims and disbursement of benefits.'"  Bank of Louisiana v. Aetna U.S. Healthcare Inc., 468 F.3d 237, 242 (5th Cir. 2006), cert. denied, 127 S. Ct. 1826 (2007) (quoting Egelhoff, 121 S. Ct. at 1328).  The Fifth Circuit has recognized that "[a] uniform administrative scheme serves to minimize administrative and financial burdens by avoiding the need to tailor plans to the peculiarities of the law of each state."  Id. (citing Ingersoll-Rand Co. v. McClendon, 111 S. Ct. 478, 484 (1990)).  The Fifth Circuit applies the following

> two-prong test to the defense of ERISA preemption. A
> defendant pleading preemption must prove that: (1) the

---

[30]Defendants' MPSJ, Docket Entry No. 21, pp. 24, 30.

claim "addresses an area of exclusive federal concern, such as the right to receive benefits under the terms of the [ERISA] Plan; and (2) the claim directly affects the relationship among traditional ERISA entities-the employer, the plan and its fiduciaries, and the participants and beneficiaries.

Bank of Louisiana, 468 F.3d at 242 (citing Mayeaux v. Louisiana Health Services and Indemnity Co., 376 F.3d 420, 432 (5th Cir. 2004)). See also Memorial Hospital System v. Northbrook Life Ins. Co., 904 F.2d 236, 245 (5th Cir. 1990) (recognizing that Fifth Circuit cases finding preemption of state law causes of action have at least two unifying characteristics:  (1) the state law claims address areas of exclusive federal concern; and (2) the claims directly affect the relationship among the traditional ERISA entities).  "Because ERISA preemption is an affirmative defense, [Humana] bears the burden of proof on both elements." Bank of Louisiana, 468 F.3d at 242 (citing Metropolitan Life Ins. Co. v. Taylor, 107 S. Ct. 1542, 1546 (1987) (ERISA preemption is a defense).

### (1) Methodist's TPPA Claims Address Areas of Exclusive Federal Concern.

Humana argues that Methodist's TPPA claims address areas of exclusive federal concern because the TPPA regulates claims processing and payment of benefits.[31]  Methodist does not dispute that claims processing and benefit payment are areas of exclusive federal concern but argues that its TPPA claims do not address

―――――――――――――

[31]Defendants' MPSJ, Docket Entry No. 21, p. 24.

-30-

those areas.[32]   Asserting that "[t]here is no dispute about the
amount owed or paid to Methodist, only that the claims were paid
late,"[33] and that it "has Provider Agreements with Defendants,"[34]
Methodist argues that its TPPA claims are not preempted under 29
U.S.C. § 1144(a) because its "claims involve only the timing of
payment under the Provider Agreements, not the right to payment
under the ERISA plans."[35]   Methodist argues that while timing for
coverage determination is governed by ERISA Plans and ERISA
regulations, timing for payment of clean claims is governed by
Provider Agreements, i.e., contracts between insurers and providers
and the TPPA's remedies for late payment, neither of which address
areas of exclusive federal concern.[36]

Humana does not dispute that Provider Agreements with
Methodist exist for its fully insured ERISA Plans, but argues that
the Provider Agreements do not prevent ERISA preemption of
Methodist's TPPA claims because those claims seek statutory

---

[32]Plaintiffs' Response, Docket Entry No. 23, pp. 25-27.

[33]Id. at 25.

[34]Id. at 26.

[35]Id.

[36]Id. at 29.   See also Plaintiffs' Response to Defendants'
Advisory of Additional Authority, Docket Entry No. 28, pp. 2-3
("Claims for benefits under ERISA plans relate to benefits
processing, a core concern of ERISA. . . The claims of providers
like Methodist for payment of contractual rates specified in
provider agreements in compliance with statutory payment periods
are not the same type of claims and do no implicate any core area
of ERISA concern.").

penalties for alleged violations of state law, i.e., the TPPA's timely pay requirements, not damages for alleged breaches of the Provider Agreements.[37]   Methodist acknowledges that the cross-motions for summary judgment now before the court do not involve claims for breach of its Provider Agreements with Humana.[38]

Methodist's argument that the TPPA's timely pay provisions do not address areas of exclusive federal concern such as processing and paying of claims,[39] conflicts with the Fifth Circuit's holding in Health Care Service Corp. v. Methodist Hospitals of Dallas, 814 F.3d 242, 255 (5th Cir. 2016), that the TPPA's timely pay provisions do address processing and paying of claims.   In Health Care Service Corp., 814 F.3d at 242, the Fifth Circuit analyzed a virtually identical argument made by Methodist with respect to whether the Federal Employee Health Benefits Act ("FEHBA") preempted TPPA claims for statutory penalties.   There the Fifth Circuit wrote:

> Methodist argues that Chapter 1301[, i.e., the TPPA,] does not "relate to" FEHBP plans because it permits a claim for statutory penalties only after an affirmative

---

[37]Defendants' MPSJ, Docket Entry No. 21, p. 11 ("Humana asserts the affirmative defense of conflict preemption under ERISA § 503(a) as to claims arising from fully-insured ERISA plans. . . The issues of whether the Methodist Hospitals' claims were 'clean claims' or whether the claims were timely paid are not presently before the Court as this Motion addresses Humana's federal preemption defenses to the TPPA.").

[38]Plaintiffs' Response, Docket Entry No. 23, p. 9 n.2 ("Regardless whether this Court grants Defendants' motion, Methodist's claims that Defendants breached the Provider Agreements remain pending and are not affected by Defendants' motion.").

[39]Id. at 26.

coverage decision and therefore requires no inquiry into
any substantive coverage determination.  But this reason-
ing ignores the effect of Chapter 1301:  By imposing
penalties for late payments of approved claims, Chapter
1301 also imposes claims-processing deadlines on FEHBP
carriers. . . [I]mposition of Chapter 1301's penalties
would expand FEHBP carriers' duties under the plans and
force them to comply with divergent state deadlines for
claims processing and payment.  Further, any inquiry
under Chapter 1301 requires an inquiry into how an FEHBP
carrier administers a plan under its contract with the
OPM [(Office of Personnel Management)].

Although Methodist fails to acknowledge the effect
of Chapter 1301, its impact on FEHBP carriers is clear.
As noted above, section 1301.103 requires insurers
receiving a "clean claim" first to "*make a determination
of whether the claim is payable*" within 45 days for
nonelectronic claims and 30 days for electronic clams,
then either (1) pay the claim, (2) partially pay and
partially deny the claim and notify the provider in
writing of the reason for partial denial, or (3) deny the
claim and notify the provider in writing of the reason
for denial.  By imposing penalties for late payments,
Chapter 1301 mandates that insurers process and pay
claims within the set time periods.  Consequently,
Chapter 1301 would directly affect the operation of the
plans and expand FEHBP carriers' duties under the plans.
On this basis, Chapter 1301 does relate to FEHBP plans.

. . . [P]reemption is supported by the recognition
that the penalties compel coverage determinations and
payments within state-imposed time periods, thereby
affecting the administration of the plans and altering
FEHBP carriers' obligations under their contracts with
the OPM.  In as much as application of Chapter 1301 to
FEHBP carriers would disrupt the uniformity of FEHBP plan
administration, we hold that FEHBA preempts Chapter
1301's application to the claims processed by BCBSTX
under FEHBP plans.

Id. at 254-55.

In reaching its conclusion that the FEHBA preempts TPPA claims

for statutory late pay penalties, the Fifth Circuit cited with

approval America's Health Ins. Plans v. Hudgens, 915 F. Supp. 2d

1340, 1359 (N.D. Ga. 2012), aff'd, 742 F.3d 1319 (11th Cir. 2014),

for its statement that the Georgia

> (Prompt Pay Statute . . . requires health plans,
> including ERISA plans, to process and to pay provider
> claims, or to send notices denying the claims, within 15
> or 30 days, depending on whether the claim is submitted
> electronically or in paper. Although not explicit, the
> statute necessarily requires that benefit eligibility
> determinations (i.e., determinations as to whether the
> claim is covered) also be made within 15 or 30 days, in
> time to satisfy the payment or notice timing requirement.
> These requirements, when applied to ERISA plans, have at
> least a "connection" with the plans.)

Id. at 254 & n.52.  See also id. at n.53 (citing Hudgens, 742 F.3d

at 1331 for "(holding that ERISA preempts application of Georgia's

prompt-pay statute to self-funded employer plans because 'employers

offering self-funded health benefit plans would be faced with

different timeliness obligations in different states, thereby

frustrating Congress's intent')."

The Fifth Circuit's analysis of the TPPA in Health Care

Service, 814 F.3d at 254-55, regarding FEHBA preemption applies

with equal force to ERISA preemption because the express preemption

clauses of both statutes require the court to determine if the

claims at issue "relate to" plans governed by the respective acts,[40]

---

[40]The FEHBA's express preemption provision states:

The terms of any contract under this chapter which relate
to the nature, provision, or extent of coverage or
benefits (including payments with respect to benefits)
shall supersede and preempt any State or local law, or
any regulation issued thereunder, which relates to health
insurance or plans.

5 U.S.C. § 8902(m)(1).

and the policies underlying both acts are essentially the same.[41] See Health Care Service, 814 F.3d at 253. Because the TPPA requires insurers receiving a "clean claim" first to "make a determination of whether the claim is payable" within 45 days for non-electronic claims and 30 days for electronic claims, Tex. Ins. Code § 1301.103, the TPPA mandates that ERISA insurers process and pay claims within set time periods established by state law. Claims processing and paying are areas that both the Fifth Circuit and the Supreme Court have characterized as areas of exclusive federal concern. See Bank of Louisiana, 468 F.3d at 242 (citing Hubbard v. Blue Cross & Blue Shield Association, 42 F.3d 942, 946 (5th Cir. 1995) (holding that a claim that would require inquiry into how benefit claims were processed implicates an area of exclusive federal concern)). See also Egelhoff, 121 S. Ct. at 1328 (recognizing that payment of benefits as "a central matter of plan administration"). Because claims processing and paying are areas of exclusive federal concern, the court concludes that the TPPA and the claims that Methodist asserts thereunder satisfy the first prong of the "relates to" test by addressing areas of exclusive federal concern.

---

[41] "The policy underlying § 8902(m)(1) is to ensure nationwide uniformity of the administration of FEHBA benefits." Health Care Service, 814 F.3d at 253 (quoting Burkey, 983 F.2d at 660).

(2) **Methodist's TPPA Claims Directly Affect the Relationship Among Traditional Entities.**

Humana argues that Methodist's TPPA claims directly affect the relationship among traditional ERISA entities because the TPPA regulates ERISA Plan administrators' and fiduciaries' performance of their duties to ERISA Plans.[42]   Methodist argues that its TPPA claims do not directly affect the relationship among traditional ERISA entities because its claims are brought by non-fiduciary third-party medical providers who are not one of the three traditional ERISA entities, i.e., employers, plans and their fiduciaries, and participants and beneficiaries.[43] Although "courts are less likely to find preemption when the claim merely affects relations between an ERISA entity and an outside party, rather than between two ERISA entities," Hubbard, 42 F.3d at 947, the Fifth Circuit has stated that "[t]he critical determination [is] whether the claim itself created a relationship between the plaintiff and defendant that is so intertwined with an ERISA plan that it cannot be separated." Bank of Louisiana, 468 F.3d at 243.   In Bank of Louisiana the Fifth Circuit reasoned that a cause of action for delay in processing and paying a claim implicated the insurer's fiduciary relationship under the plan, thereby satisfying the second prong of the "relates to" test.   Id. at 244.

----

[42]Defendants' MPSJ, Docket Entry No. 21, pp. 27-28.   See also Humana's Reply, Docket Entry No. 25, p. 14.

[43]Plaintiffs' Response, Docket Entry No. 23, p. 27 ("Providers like Methodist who contract with insurers are not parties to this triparty relationship.").

Because as explained in the preceding section, the TPPA requires ERISA insurers receiving a "clean claim" first to "make a determination of whether the claim is payable" within 45 days for non-electronic claims and 30 days for electronic claims, Tex. Ins. Code § 1301.103, the TPPA mandates that ERISA insurers process and pay claims within set time periods established by state law. Consequently, as recognized by the Fifth Circuit in Health Care Service, 814 F.3d at 255, with respect to plans governed by the FEHBA, the TPPA's "penalties compel coverage determinations and payments within state-imposed time periods, thereby affecting the administration of the plans and altering . . . carriers' obligations under their contracts with [plan sponsors]." Because application of the TPPA to ERISA Plans directly affects the relationship between traditional ERISA entities by creating a relationship between the plaintiff and defendant that is so intertwined with an ERISA Plan that it cannot be separated, the second prong of the "relates to" test is satisfied.

### (3) Conclusion

Because the TPPA and the claims that Methodist asserts thereunder satisfy both the first and second prongs of the Fifth Circuit's "relates to" test by addressing areas of exclusive federal concern and by directly affecting the relationship between traditional ERISA entities, the court concludes that the TPPA "relates to" an ERISA Plan.  This conclusion comports with the

-37-

purpose of ERISA, which as stated in <u>Travelers</u>, 115 S. Ct. at 1677-78, is "to avoid a multiplicity of regulation in order to permit the nationally uniform administration of employee benefit plans."

(b)   The TPPA is Not "Saved" from Preemption.

Citing <u>Ellis</u>, 394 F.3d at 262, and <u>North Cypress Medical Center Operating Co., Ltd. v. Cigna Healthcare</u>, 781 F.3d 182 (5th Cir. 2015), Humana argues that ERISA's "Saving Clause," 29 U.S.C. § 1144(b)(2)(A), does not save the TPPA from preemption.[44]   In <u>Ellis</u> the Fifth Circuit held that

> for a state law to be deemed a "law . . . which regulates insurance" under Section 1144(b)(2)(A) and thus be exempt from traditional ERISA preemption, such law must (1) be directed toward entities engaged in insurance, and (2) substantially affect the risk pooling arrangement between the insurer and the insured.

394 F.3d at 276 (citing <u>Kentucky Association of Health Plans, Inc. v. Miller</u>, 123 S. Ct. 1471, 1479 (2003)).   In <u>North Cypress</u> the Fifth Circuit recognized that the TPPA could indirectly impact the risk pooling arrangement between insurer and insured, but based on the Supreme Court's holding in <u>Miller</u>, the Fifth Circuit held that "these potential indirect impacts do not 'substantially affect the risk pool arrangement between the insurer and the insured.'" 781 F.3d at 200 (citing <u>Miller</u>, 123 S. Ct. at 1479).   Thus, the <u>North Cypress</u> court held that the TPPA is not saved from preemption. Methodist has neither argued nor cited any evidence capable of

_____

[44]Defendants' MPSJ, Docket Entry No. 21, pp. 29-30.

establishing that the TPPA substantially affects the risk pooling arrangement between the insurer and insured. ERISA's Saving Clause does not save Methodist's TPPA claims from preemption.

(c) The TPPA's Late Pay Penalties Conflict with ERISA's Claim Processing Regulations.

Citing 29 U.S.C. § 1133(2) and 29 C.F.R. § 2560-503.1, Humana argues that Methodist's TPPA claims are also preempted because its statutory deadlines and late pay penalties conflict with ERISA's claim processing regulations.[45] Asserting that § 1133(2) authorizes the Department of Labor ("DOL") to develop claim-processing regulations so that ERISA plan enrollees receive a full and fair review of their claims, Humana argues that the DOL has promulgated regulations setting uniform deadlines for processing health benefits claims like the TPPA at issue here. Humana argues that

> ERISA's federal regulations require that ERISA plans provide notice of a claim denial within 30 days of receipt of the claim. The period may be extended by 15 days in certain circumstances "due to matters beyond the control of the plan."
>
> However, the TPPA impermissibly shortens this deadline by narrowing the scope of the 15-day extension from the deadline within which a plan must take action on a claim. Thus, electronically submitted claims must be adjudicated within 30 days, even when additional time is needed and permitted by federal regulation "due to matters beyond the control of the plan." This conflict is precisely the type of situation Congress sought to avoid by promulgating ERISA and the comprehensive claims regulations contained with[in] 29 C.F.R. § 2650.503-1. As recognized by the Supreme Court, a principal goal of

[45]Id. at 24-31.

-39-

ERISA is "to establish a uniform administrative scheme, which provides a set of standard procedures to guide processing of claims and disbursement of benefits." Application of the TPPA to ERISA plans frustrates that goal by imposing regulations on plans that conflict with those set forth [in 29 U.S.C. § 1133(2)].[46]

Methodist responds that the TPPA as applied to its claims does not conflict with ERISA's claims processing regulations because the TPPA does not regulate the timing of benefits payments to ERISA beneficiaries. Asserting that "ERISA regulation 29 C.F.R. § 2560.503-1 specifies 'employee benefit plan procedures pertaining to *claims for benefits by participants and beneficiaries,*'"[47] Methodist argues that "[t]he regulations pertaining to ERISA plans clearly do not conflict with [the] TPPA as applied to [its] claims submitted as a provider."[48] Methodist's argument that its TPPA claims do not conflict with ERISA because its claims are submitted as a provider not as a participant or beneficiary is essentially the same argument that Methodist made to show that its TPPA claims do not "relate to" ERISA Plans, i.e., because the TPPA permits claims for statutory penalties only after an affirmative coverage decision, the TPPA does not require inquiry into any substantive coverage determination. But as the court stated in section III.C.2.a., above, Methodist's argument ignores the fact that by

---

[46]Id. at 32-33.

[47]Plaintiffs' Response, Docket Entry No. 23, p. 31.

[48]Id.

-40-

imposing penalties for late payments of approved claims the TPPA imposes claims-processing deadlines on ERISA administrators, and allowing states to regulate the timing of claims administration by ERISA administrators would conflict with ERISA's purpose "to avoid a multiplicity of regulation in order to permit the nationally uniform administration of employee benefit plans." Travelers, 115 S. Ct. at 1677-78. Because application of the TPPA to ERISA carriers would disrupt the uniformity of ERISA plan administration, the court holds that the TPPA directly conflicts with congressional policies behind ERISA. See Health Care Service, 815 F.3d at 255.

**D. Humana is Entitled to Summary Judgment on the TPPA Claims Asserted Against Humana Inc. and HGB.**

Citing the Declaration of Leslie Poff, Humana argues that it is entitled to summary judgment on the TPPA claims asserted against Humana Inc. and HGB because neither of these entities issued health insurance policies from which Methodist's TPPA claims arise.[49] In pertinent part, the Poff Declaration states:

> there are no claims on the Responsive Demand Spreadsheet attached as Exhibit A-2 arising from health plans issued by Humana Military Healthcare Services, Inc. n/k/a Humana Government Business, Inc. Similarly, as Humana Inc. does not offer any health plans, no claims on the Responsive Demand Spreadsheet attached as Exhibit A-2 arise from a Human Inc. health plan.[50]

---

[49]Defendants' MPSJ, Docket Entry No. 21, pp. 11, 14, 33-34.

[50]Poff Declaration, Exhibit A to Defendants' MPSJ, Docket Entry No. 22, p. 3 ¶ 5.

Methodist has not submitted any evidence contradicting Poff's declaration that none of the TPPA claims asserted in this action arise from health plans issued by Humana Inc. or HGB. Instead, Methodist merely states that "[w]ithout waiving its right to do so in other proceedings, in this action Methodist is not pursuing any claims against entities with which it does not have a contract."[51] Because Methodist has failed to present any evidence capable of creating a fact issue as to the TPPA claims asserted against Humana Inc. and HBG, Humana is entitled to summary judgment on Methodist's TPPA claims against these defendants.

## IV.  Conclusions and Order

For the reasons stated in § III.B above, the court concludes that Methodist's TPPA claims arising from MA Plans are preempted by the Medicare Act; for the reasons stated in § III.C above, the court concludes that Methodist's TPPA claims arising from fully insured ERISA Plans are preempted by ERISA; and for the reasons stated in § III.D above, the court concludes that Humana is entitled to summary judgment on the TPPA claims asserted against Humana Inc. and HGB. Accordingly, Defendants Humana Insurance Company, Humana Military Healthcare Services, Inc. n/k/a Humana Government Business, Inc., Humana Inc., and Health Value Management, Inc. d/b/a Choicecare Network's Motion for Partial

---

[51]Plaintiffs' Response, Docket Entry No. 23, p. 32.

Summary Judgment (Docket Entry No. 21) is **GRANTED**. Methodist's claims for prompt pay penalties identified in Exhibits A-2 and A-3 (Docket Entry Nos. 22-2 and 22-3), specifically Medicare Advantage claims (lines 2 through 332); ERISA claims (lines 343 through 358); and Methodist's claims against Humana Inc. and Humana Government Business, Inc. are hereby **DISMISSED WITH PREJUDICE.**

The court will conduct a scheduling conference on July 28, 2017, at 3:00 p.m., in Courtroom 9-B, 9th Floor, United States Courthouse, 515 Rusk Avenue, Houston, Texas 77002. The parties are **ORDERED** to file an Amended Joint Discovery/Case Management Plan by July 26, 2017.

**SIGNED** at Houston, Texas, on this the 17th day of July, 2017.

SIM LAKE
UNITED STATES DISTRICT JUDGE

-43-